**MEINKE et, Plaintiffs v SCHOBER et, Defandants.**

Common Pleas Court, Cuyahoga County.

No. 512,972.   Decided March 24, 1943.

Ulmer, Berne & Gordon, Cleveland, for plaintiffs.
C. L. White, Cleveland, and James F. Shaffer, Cleveland, for defendants.

### OPINION

By McNAMEE, J.
Plaintiffs claim a right-of-way by prescription in a three foot strip of land owned by defendants and seek an order of this court

requiring defendants to remove certain poles which the latter have erected on the boundary line between the properties owned and occupied by plaintiffs and defendants. Plaintiffs also seek an order permanently restraining defendants from interfering with plaintiffs' use of said three foot strip of land as part of the driveway from the street to a garage located on plaintiff's lot.

The facts essential to an understanding of the decision herein reached are:

Plaintiffs have owned and occupied the premises described as theirs in the petition continuously since 1917. Their property is located on the west side of East 113th Street in the city of Cleveland. Defendants have owned and occupied the adjoining premises on the north since 1937. Defendants purchased their property from Elmer Ursem, who acquired title by inheritance from his mother about 1932. The mother, Mrs. Ursem, was the owner of defendants' property in 1917 at the time plaintiffs acquired the property now owned by them. The homes of plaintiffs and defendants set back a distance of about eighteen feet from the westerly line of East 113th Street. The land lying between the two houses and extending from the front to the rear thereof consists of a plot about eight feet wide, the southerly five feet being owned by plaintiffs and the northerly three feet thereof being located on defendants' lot. There is adequate space on plaintiffs' lot between the street line and the set-back lines for the passage of an automobile. However, from the set-back lines to the rear of both houses it is necessary to travel over all of the land between the houses in driving an automobile to and from plaintiffs' garage.

In September, 1941, defendants erected poles on the boundary line three feet south of their house, thus preventing plaintiffs from using the driveway. Plaintiffs claim that since 1918 they have openly, continuously, exclusively and adversely used the three foot strip owned by defendants located between the houses for driveway purposes.

When plaintiffs acquired their property in 1917 there was a small garage located on the rear of their lot. At that time they did not own an automobile. Mr. Mizner who was plaintiffs' grantor testified that he informed Arthur Meinke that the space between the two houses which was located on plaintiffs' lot was not wide enough for a driveway. He further informed Meinke that if the latter desired to use the additional three feet owned by the adjoining property owner it would be necessary to get permission to do so.

Mizner also testified that Meinke not owning an automobile at that time "did not seem interested." It appears that Mizner, prior to 1917 during the time he owned plaintiffs' property used the adjoining three foot strip as a driveway with the permission of the adjoining owner.

From 1917 until the following year the three foot strip was used only as a parking space for guests of plaintiffs. In 1918 plaintiffs leased their garage to a Mrs. Watkins who drove her automobile to and from the street and garage over the three foot strip in question. Mrs. Watkins continued to use the garage and driveway until 1922.

Some time between 1918 and 1922 Mrs. Watkins purchased a larger automobile, at which time plaintiffs enlarged their garage. In the latter year plaintiffs purchased an automobile and continuously since that time until September, 1941, they have driven over the the three foot strip on defendants' property in entering and leaving the garage

Plaintiffs testify that they did not ask or receive permission to use the three foot strip for driveway purposes. There is no oral testimony in the record directly to the contrary.

In 1932, shortly after Mrs. Ursem's death, plaintiff Linda Meinke requested permission of Elmer Ursem, who was the then owner of the adjoining property, to place cinders on the three foot strip. This request was refused. Linda Meinke testified that at the time she requested permission to improve the driveway with cinders "she felt that Mr. Ursem had the right to say whether she could do so of not."

In September, 1941, defendants requested plaintiffs to sign a paper stating that they did not claim the right to use said three foot strip by prescription. Upon plaintiffs' refusal to sign as requested defendants as above noted erected poles on the boundary line.

It is beyond dispute that plaintiffs have used the three foot strip of land openly, continuously, exclusively and with the knowledge of the present owners and their predecessors in interest for more than 21 years. The question to be determined is, did they use this strip of land adversely and under a claim of right?

The syllabi of **Pavey v Vance et, 56 Oh St, page 162,** read:

"1. Where one uses a way over the land of another without permission as a way incident to his own land and continues to do so with the knowledge of the owner, such use is, of itself adverse, and evidence of a claim of right. And where the owner of the servient estate claims that the use was permissive, he has the burthen of showing it.

"2. When one who is the owner of a tract of land uses a way over the land of another for the convenience of egress and regress to his own land, without let or hindrance and without obstruction for the period of twenty-one years, he thereby, in the absence of anything to the contrary, acquires a right by prescription to its use as an incident to his land; and the right will pass by a conveyance or descent of the land."

By authority of the foregoing pronouncement of the Supreme Court, the open, continuous and exclusive use of another's lands as

a way without permission of the owner is an adverse user which ripens into a prescriptive right at the expiration of twenty-one years. If plaintiffs' testimony that they neither sought nor obtained permission to use the land in question as a driveway is to be accepted as conclusive; this court is bound to find that such use by them was adverse. The probative value of their testimony in this regard, however is vitiated in no small degree by conduct on their part which is consistent with a permissive rather than an adverse use. Ordinarily a property owner does not invite his immediate neighbors' displeasure or hostility by committing a trespass of such extensive proportion as to use all of the contiguous land owned by a neighbor which is available for driveway purposes. Especially is this true where one can achieve the desired result and retain his neighbors' good will by the simple expedient of requesting permission.

Plaintiffs knew at the time they acquired their property that their immediate predecessor in interest had used the three foot strip of land with the permission of the adjoining owner. They were also advised by their grantor that if they desired to use the adjoining land it would be incumbent upon them to obtain permission to do so. Plaintiffs knew from the experience of their grantor that it was reasonably certain such permission could be obtained without difficulty. Under these circumstances it would have been inconsistent with normal conduct for plaintiffs to have used the three foot strip under a claim of right. Ordinary prudence would dictate that the hazard of such action be avoided. It is reasonably to be supposed that plaintiffs' use of the three foot strip without the adjoining owners' consent would have involved the risk of incurring the latters' disfavor, which might have been expressed in an absolute prohibition against plaintiffs' use of the land at any time. It is difficult to believe therefore that plaintiffs rented their garage to Mrs. Watkins without having first received definite assurance from the adjoining owner that their tenant would be permitted to use the driveway. That such assurance was received is indicated by plaintiffs' action in enlarging their garage for Mrs. Watkins' use at their own labor and expense.

By this action plaintiffs gave clear evidence of their confident belief in the certain prospect of being able to continue to use the driveway without interference by the adjoining owner. Plaintiffs' conduct in this regard proclaims more eloquently than their testimony to the contrary that the use of the three foot strip was permissive rather than adverse. That the user was permissive is confirmed by the request of Mrs. Meinke to Elmer Ursem in 1932 for permission to put cinders on the driveway. As hereinbefore noted, Mrs. Meinke felt that Ursem had a right to say whether this could be done. If Mrs. Meinke's request had been granted and the driveway improved by plaintiffs, its use thereafter would have been permissive. The fact that the request was denied does not alter the character of the user.

In making this request for permission to improve the driveway, plaintiffs recognized the adjoining owners' superior right in the land. They clearly indicated their unwillingness to risk the loss of the license to use the driveway in its natural state by attempting to change its structural character without the adjoining owners' permission.

"When a person using the easement has within the prescriptive period acknowledged a superior right in the other party, such admission is fatal to his claim." 19 C. J., 884.

Plaintiffs' testimony that they did not ask or receive permission to use the three foot strip must be evaluated in the light of all the circumstances, including the death of Mrs. Ursem and her consequent unavailability as a witness. Even though no permission was expressly granted the court is convinced that a permissive use is implicit in the facts and circumstances as developed by the evidence.

"No easement by prescription can be acquired where the privilege is used by the express or implied permission or license of the owner of the land." Thompson, "Real Property," Vol. 1, Page 708; Sec. 432.

Undoubtedly the use of the three foot strip which comprised more than one third of all the land lying between the two houses was made possible through the neighborly kindness of Mrs. Ursem. Neighborly courtesy is not a sound basis upon which to base a case of adverse user.

"The law should and does encourage acts of neighborly courtesy. A land owner who quietly acquiesces in the use of a path or road across his uncultivated land resulting in no injury to him but in great convenience to his neighbor ought not to be held to have thereby lost his rights. It is only when the use of the path or road is clearly adverse to the owner of the land in an enjoyment of a neghborly courtesy that the land owner is called upon to go to law to protect his rights." Weaver v Pitts, 191 N. C., page 747, at page 749 of the opinion.

"A prescriptive title must be acquired adversely. It cannot be adverse when it rests upon a license or a mere neighborly accommodation. Adverse user is the antithesis of permissive user. If the use is accompanied by any recognition in express terms or by implication in the right of the land owner to stop such use now or at some time in the future, the use is not adverse." Jensen v Gerrard, 39 Pac. (2d), 1070 at page 1073 of the opinion.

Further comment on the same subject is to be found in Wall v Landman, 148 S. E., 779, at page 781, wherein the court says:

"In order to ripen into a prescriptive right the claim to the use of the way must be adverse, that is, not accorded as a mere accommodation but asserted under a claim of right hostile to the rights of the servient estate so as to expose the claimant to an action if his claim is not well founded."

It is to be seriously questioned, if Mrs. Ursem were now alive and still the owner of the adjoining property, that plaintiffs could effectively assert as against her a prescriptive right to a perpetual easement over her property. These defendants who are Mrs. Ursem's mediate successors in interest possess identical rights in the same property. While it does not appear that the continued use of the three foot strip by plaintiffs will result in any serious inconvenience or damage to defendants, the effect of holding that plaintiffs have acquired a prescriptive right to such use would place a burden upon defendants' land which in the opinion of the court is not warranted under the facts of this case.

Plaintiffs' prayer for injunctive relief is denied. O. S. J.